**Ronald Clifford BECK, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 50498.

Court of Criminal Appeals of Texas.

July 7, 1976.

Rehearing Denied March 16, 1977.

Gordon E. White and Sam R. Wilson, Houston, for appellant.

Carol S. Vance, Dist. Atty., James C. Brough and Jim Ezer, Asst. Dist. Attys., Houston, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

OPINION

ROBERTS, Judge.

This is an appeal from a conviction for possession of marihuana. Trial was before the court and the only issue was whether the contraband was seized as the result of an illegal arrest and search. The offense occurred on April 7, 1972; trial was held on December 7, 1972; and appellant was found guilty and given a three-year probated sentence.

The evidence surrounding appellant's arrest and search is as follows. On April 7, 1972, Officers Wood and Fisher of the Houston Police Department were traveling westbound on Crane Street in Houston. They observed appellant, who was coming toward them on Crane in a 1965 pickup truck, turn right on Falls without signaling. The officers testified that they were about ten car lengths ahead of appellant when he made his turn and that there was traffic going in both directions on Crane at the time. The officers then turned left on Falls, behind appellant, and pulled him over.

As their respective vehicles were coming to a stop, the officers observed appellant make a move toward the glove compartment of his truck. Upon stopping, appellant got out of his truck and stood by the driver's door. Fisher searched appellant and Wood opened the truck's glove compartment, where he found the baggie of marihuana that is the subject of this prosecution.

Appellant first contends that his arrest was illegal since the evidence did not show that he had violated the traffic laws. In *Willett v. State*, 454 S.W.2d 398 (Tex.Cr. App.1970) and *Hall v. State*, 488 S.W.2d 788 (Tex.Cr.App.1973) convictions were reversed because they were based on evidence seized after traffic arrests for failure to signal a turn. At the times of the offenses in those cases, Art. 6701d, Sec. 68(a), V.A. C.S. required a turn signal only when other traffic in the area might be affected by the turn. Because of an insufficient showing of such effect on other traffic in those two cases this Court held that Willet and Hall were stopped illegally, and that the contraband subsequently seized was inadmissible.

■ Prior to the offense in this case, however, Art. 6701d, Sec. 68(a), V.A.C.S. was amended to read as follows:

"Sec. 68. (a) No person shall . . . turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with safety. Ex-

cept under conditions set out in Section 24(a) [not here applicable] no person shall so turn any vehicle without giving an appropriate signal in the manner hereinafter provided."

It thus appears that turn signals are now mandatory, regardless of the traffic conditions at the time of the turn. Appellant was therefore in violation of the law when he made his turn, and the officers were legally justified in effecting his arrest. Art. 6701d, Sec. 153, V.A.C.S. *Tores v. State*, 518 S.W.2d 378 (Tex.Cr.App.1975).

■ The more difficult question concerns the right of the officers to search appellant's truck after the valid traffic arrest. This search was justified only if the search incident to appellant's arrest was necessary for the officers' protection and limited in scope to that purpose, United States Const., Amend. IV; Texas Const., Art. I, Sec. 9; *Preston v. United States*, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964); *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Wallace v. State*, 467 S.W.2d 608 (Tex.Cr.App.1971); *Maldonado v. State*, 528 S.W.2d 234 (Tex.Cr.App.1975), or if the officers had independent probable cause to search the car. *Dyke v. Taylor Implement Mfg. Co.*, 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968); *Trusley v. State*, 505 S.W.2d 861 (Tex.Cr.App.1974). We conclude that the facts of this case failed to establish a justification for the officers to conduct this search.

■ The warrantless search of appellant's automobile can be upheld as incident to his lawful arrest if it was reasonably necessary to protect the officers from bodily injury during their brief detention of appellant. E. g. *Garcia v. State*, 440 S.W.2d 295 (Tex.Cr.App.1969). The case of *Lewis v. State*, 502 S.W.2d 699 (Tex.Cr.App.1973) is instructive here.

"An 'officer should be permitted to take every reasonable precaution to safeguard his life in the process of making an arrest.' *State v. Riley*, 240 Or. 521, 402 P.2d 741, 743 (1965); *Wallace v. State*, 467 S.W.2d 608, 610 (Tex.Cr.App.1971).

All searches incidental to arrest cannot be justified on this theory, for to do so would allow wholesale fishing expeditions whenever a legal arrest is made. *United States v. Tate,* [D.C.], 209 F.Supp. 762 (1962). See also *Adair v. State,* 427 S.W.2d 67, 75 (Tex.Cr.App.1968) (dissenting opinion). If, however, from the totality of the circumstances presented to the officer he has reasonable grounds to believe that he is in danger of bodily harm or injury or that the person he encounters is armed or dangerous, justification for a search for weapons exists. *Brinegar v. State,* 97 Okl.Cr. 299, 262 P.2d 464 (1953); *State v. Scanlon,* 84 N.J.Super. 427, 202 A.2d 448 (1964); *Elliott v. State,* 173 Tenn. 203, 116 S.W.2d 1009 (1938)." Id. at 702.

The test of the constitutionality of such a search was put another way in *Wood v. State,* 515 S.W.2d 300 (Tex.Cr.App.1974), relied upon by the State, in the following words:

"So long as the officer is entitled to make a forcible stop and has reason to believe that the suspect is armed and dangerous, the officer may conduct a weapons search limited in scope to the purpose of enabling the officer to pursue investigation without fear of violence." Id. at 306.

In any event, the officer's apprehensions must be reasonable.

There was testimony at the trial that the search was for the officers' self-protection, but at no time did either officer testify that he was in fear of danger to himself or others. In fact, the reasons for such apprehension would have been sparse indeed. The time was 8:00 p. m. and "it wasn't quite dark." The neighborhood was not a high crime area. The officers outnumbered the appellant. Neither officer suspected appellant to be intoxicated or under the influence of drugs. Most importantly, both officers testified that appellant could not have reached the glove compartment from where he was standing. This case is thus distinguishable from *Imhoff v. State,* 494 S.W.2d 919 (Tex.Cr.App.1973); *Madeley v. State,* 488 S.W.2d 416 (Tex.Cr.App.1972), and *Lewis v. State,* 490 S.W.2d 846 (Tex.Cr. App.1973) in which the defendants in those cases could have lunged for weapons in their cars.

As to the question of the reasonableness of the officers' apprehensions, the case of *Keah v. State,* 508 S.W.2d 836 (Tex.Cr.App. 1974) is closely in point. There, officers stopped an automobile around midnight for failure to signal a right turn and observed appellant lower his left shoulder as if to place something under the seat. Outside of the stopped car, they observed a large bulge in appellant's left pocket after he removed his hand therefrom. After receiving no reply to questions concerning the nature of the bulge in the pocket, one of the officers reached in appellant's pocket and retrieved a plastic bottle containing amphetamines. This Court held that the facts of *Keah* were insufficient to justify a self-protective search for weapons. The present case is distinguishable from *Keah,* supra, in that there was no hint that the officers there felt any apprehension, but the bulge in Keah's pocket, alone, was more forboding than any of the facts sought to justify the self-protective search in this case.

This record presents nothing that would have given the officers reasonable grounds to believe that they were in danger of bodily harm or injury or that the person they encountered was armed or dangerous. The hour was not late; the area was not dangerous; the appellant did not appear intoxicated and did not cause any trouble; there was no suspicion of criminal activity or any evidence of such activity in plain view. The case is thus distinguishable from the other cases cited above. The search herein was not reasonably incident to appellant's arrest.

*Wilson v. State,* 511 S.W.2d 531 (Tex.Cr.App.1974) appears to be dispositive of the probable cause aspects of this case. That case also involved a routine traffic arrest and the movement of an arm on the part of the defendant. Wilson was detained behind his car by one officer while the other searched the car and discovered the contraband. As in this case, the de-

fendant was not in a position to lunge for any weapon in the car and there was no express testimony that the officers feared for their physical safety. This Court held that the defendant's gestures, alone, did not give the officers sufficient probable cause to search the car. There is nothing more in this case except the officers' unexplained belief that a protective search was necessary. See also *Keah v. State*, supra, and *Brown v. State*, 481 S.W.2d 106 (Tex.Cr. App.1972), and *In re S. E. B.*, 514 S.W.2d 948 (Tex.Civ.App.—El Paso 1974). We therefore conclude that the search of appellant's truck in this case was unsupported by probable cause.

For the foregoing reasons, the judgment is reversed and the cause remanded.

DOUGLAS, Judge (dissenting).

The majority reverses this conviction because officers making a search after a valid arrest for a traffic violation did not state that they were in fear of danger to themselves or others. The majority holds that an officer, upon stopping an offender and sees him place something in a glove compartment, cannot search that compartment for his protection because it is unreasonable for the officer to think that the offender might have been hiding a gun.

Officer M. R. Wood testified that at about 8:00 o'clock at night he arrested appellant because he made a turn without giving a signal. As appellant was pulling to the curb, he reached with an outstretched arm toward the glove compartment. After being stopped, appellant ". . . jumped out of the truck, and my partner searched him for weapons, and I went to the location where I saw him reach to the box" to see if he had placed a weapon or contraband there. Appellant was standing by the door of the truck. He found a plastic bag that appeared to be marihuana. He related that it was a protective search and ". . . if he had placed a weapon in there, then after the search when we'd leave, he could have gone back to the box, retrieved whatever he placed there and done whatever harm he had on his mind if

he had any" and "I was not looking for the fruits of this crime just for my own protection." B. C. Fisher, another officer, testified about their stopping appellant and seeing appellant reaching toward the glove compartment as if to put something there or retrieve something, possibly some type of weapon.

The majority reasons that he could not harm the officers while he was outside the truck and the search for their protection was not reasonable. The testimony of Officer Wood that appellant might get a weapon out of the glove compartment and do whatever harm he wanted is sufficient to show the search was reasonable.

The Constitutions of the United States and State of Texas only prohibit unreasonable searches. In my opinion this search was reasonable. One with a gun can kill just as easily after he gets back into his vehicle as he could before alighting. See *Borner v. State*, 521 S.W.2d 852 (Tex.Cr. App.1975), where this Court wrote:

". . . the search of the area where the occupants were seated was for the protection of the officers. *The Supreme Court of the United States authorizes searches after an arrest for the protection of officers for any weapon that might be readily obtained.* See *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). . . ." (Emphasis supplied)

Mr. Justice Black, speaking for the Supreme Court of the United States in *Preston v. United States*, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777, wrote:

"The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer . . . ."

It should not be necessary for an officer to be required to be in fear of his life or that he searched for his protection. The officer in the present case testified that he searched for his protection. If he had not been at least apprehensive or in fear of bodily injury, he would not have conducted the search. The Supreme Court of the

United States upheld the search of a person after an arrest for a traffic violation based upon probable cause that Robinson was violating a traffic regulation of the District of Columbia in *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). The Court wrote:

"It is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment."

Prior to the Supreme Court decision, the Court of Appeals for the District of Columbia in *United States v. Robinson*, 153 U.S. App.D.C. 114, 471 F.2d 1082 (1973), had held the same search was unreasonable. The Court of Appeals noted that there was no suggestion that a wadded up cigarette package in Robinson's pocket was believed to be a weapon or that the officer believed himself to be in danger. The officer in that case, according to the Circuit Court opinion, did not have any specific purpose in mind when he made the search. "I just searched him. I didn't think about what I was looking for. I just searched him." The wadded up cigarette package contained heroin. The Circuit Court held that "Officer Jenks exceeded the permissible scope of a limited frisk for weapons," and stated that a search after an arrest for violating a mere motor vehicle regulation was illegal. The Supreme Court held otherwise.

In *Gustafson v. Florida*, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973), the Supreme Court of the United States upheld a search of one who was arrested for not having a driver's license. Gustafson was convicted for the possession of marihuana. After observing an automobile being driven or weaving across the center line of a road several times, officers followed and stopped it. Gustafson, the driver, was unable to produce an operator's license and was arrested. The Supreme Court wrote:

"Though the officer here was not required to take the petitioner into custody by police regulations as he was in *Robinson*, and there did not exist a departmental policy establishing the conditions under which a full-scale body search should

be conducted, we do not find these differences determinative of the constitutional issue. . . . *'The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect.'* " (Emphasis supplied)

The Supreme Court held that there was probable cause for the arrest in the *Robinson* case. There Officer Jenks learned that Robinson did not have a valid license to operate an automobile. When the officer later saw him driving, the arrest was authorized.

The Uniform Act Regulating Traffic on Highways, Article 6701d, Section 153, V.A. C.S., provides:

"Any peace officer is authorized to arrest without warrant any person found committing a violation of any provision of this Act."

This includes the right to arrest for making an illegal turn under the Act.

The majority recognizes that appellant was under arrest. The right to a reasonable search follows the right to arrest.

In *Wood v. State*, 515 S.W.2d 300 (Tex.Cr. App.1974), the driver of a car was arrested for a traffic violation. Wood, a passenger, had difficulty keeping his eyes open and the officer thought he was under the influence of alcohol or drugs. The officer patted down Wood, felt what he thought was a knife and found three rolls of coins and some currency. He radioed for assistance and then searched and found two pistols in the car. Even though the passenger was outside the car, this Court held the search to be reasonable. Wood could not have reached the guns from outside the car. In *Wood*, this Court wrote:

". . . So long as the officer is entitled to make a forcible stop and has reason to believe that the suspect is armed and dangerous, the officer may conduct a weapons search limited in scope to

the purpose of enabling the officer to pursue investigation without fear of violence. . . ."

In the *Wood* case the officer did not testify that he was afraid. He stated that it is a dangerous situation when one is alighting from a vehicle in any traffic situation at that time of night. Is the majority overruling *Wood*?

In *Borner & Ebeling v. State*, 521 S.W.2d 852 (Tex.Cr.App.1975), both Borner and Ebeling were in the car when officers stopped the car to arrest the driver for speeding. The passenger in the car moved something from above the dash to between the passenger and the driver. The officer could not tell what it was. When the officer was asked if he saw anything that aroused his suspicion, he answered that the officers saw the passenger shuffling around and trying to hide something on the seat. Both Borner and Ebeling were outside the car and were searched. One officer searched the inside of the car and, among other things, found a pistol and marihuana. Even though the two men were outside the car and could not have at that time reached the gun, this Court held that the search was authorized. There was no direct testimony that the officers in that case were in fear of danger.

If the majority of the Court is holding contrary to previous decisions that a search is legal where there is a movement that could indicate that the driver was hiding something, possibly a gun, it should so state. If the majority is holding that there can be no search of a car after a traffic arrest, it should say so.

The viewpoint of the writer of this opinion has been expressed in the concurring opinion in *Wood*, and in the dissenting opinion in *Wilson v. State*, 511 S.W.2d 531 (Tex. Cr.App.1974). An officer has a right to check any place in an automobile that a driver or passenger might reach when he re-enters the automobile after being legally stopped. If a fugitive is allowed to enter a car where a gun is accessible, he may kill the officer to prevent being arrested for a more serious offense such as robbery or murder. The driver, after being arrested for a traffic offense, knows that the officer has his name from his license to operate the car, and if the officer checks to see if he is wanted, it could lead to his earlier detention and arrest. Too many officers are being killed after arresting people for traffic offenses. See the dissenting opinion in *Wilson*, supra, for the number of officers killed after making traffic arrests at the time that opinion was written.

The statutes of Texas authorize the arrest of an offender of the traffic laws and taking him into custody. This Court has upheld the search of the person after an arrest as well as a limited search of his car. The Supreme Court has upheld the arrest for traffic regulation violators and the search of their persons even though the arresting officer was not in fear of his life. It also recognizes the right of the officer to search in the vicinity of where the arrest has been made.

The search in the present case is not unreasonable.

The judgment should be affirmed.