# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00497-CV

**Texas Department of State Health Services and David L. Lakey, M.D., Commissioner, Appellants**

**v.**

**Nancy Holmes, CLHRP, CME, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 419TH JUDICIAL DISTRICT NO. D-1-GN-08-002178, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING

## O P I N I O N

The Texas Department of State Health Services and its Commissioner, David Lakey, (collectively, "DSHS") bring this interlocutory appeal from the trial court's order denying its plea to the jurisdiction and granting a temporary injunction in favor of appellee Nancy Holmes, lifting the DSHS embargo on a laser device owned and operated by Holmes for the purpose of providing laser hair removal services. We affirm the trial court's order.[1]

## BACKGROUND

On June 18, 2008, a DSHS representative inspected Holmes's laser hair removal business and made a determination that Holmes was using her laser device in a manner that violated the Texas Food, Drug, and Cosmetic Act. *See* Tex. Health & Safety Code Ann. §§ 431.001-.279

---

[1] The parties' respective motions for leave to file supplemental briefing are hereby granted.

(West 2001 & Supp. 2008). As a result of this determination, DSHS issued Holmes a notice of detention, detaining her laser device on-site. Specifically, DSHS maintained that Holmes's use of the laser was not adequately supervised by a medical doctor because, among other things, she did not obtain a prescription or other written order from a physician for each patient on whom she performed laser hair removal.

Holmes filed suit, raising a due process claim and seeking declaratory and injunctive relief, including the release of her laser device. Holmes then obtained a temporary restraining order, enjoining DSHS from further inspecting her facilities and equipment or taking other enforcement action on the basis that a prescription is required for each patient undergoing laser hair removal. Six days later, the trial court held an evidentiary hearing on DSHS's plea to the jurisdiction and Holmes's motion for a temporary injunction. The trial court denied the plea to the jurisdiction, granted the temporary injunction in part, enjoining DSHS from disposing of, destroying, or selling the laser device, and abated the case to allow Holmes to exhaust her administrative remedies.

Holmes then requested modification of the temporary injunction. After a hearing, the trial court issued a modified temporary injunction, requiring that the embargo of the laser device be lifted and that Holmes be allowed to use the laser, subject to certain conditions regarding the supervision of a medical doctor. Over DSHS's objection, the trial court did not require Holmes to obtain a prescription for each use of the laser device, requiring only "the level of supervision . . . that the medical director, in his discretion deems necessary for the performance of laser hair removal." The trial court further found that due process required that Holmes be given an administrative hearing, abating the case until administrative remedies had been exhausted. A hearing was held

before the State Office of Administrative Hearings (SOAH) on August 4, 2008, in which DSHS requested that its case be dismissed with prejudice.[2] The administrative law judge granted the motion to dismiss, finding "that granting the Department's motion to dismiss with prejudice effectively provides an administrative hearing and due-process remedy to [Holmes] on the issue of the Department's detention of [Holmes's] products and exhausts all administrative remedies on that issue."[3]

DSHS then filed a notice of interlocutory appeal of the trial court's order denying the plea to the jurisdiction and granting the temporary injunction. On appeal, DSHS argues that the trial court erred in not requiring Holmes to obtain an order or prescription from a physician for each patient on whom she performs laser hair removal, that the temporary injunction was improper because Holmes did not make a showing that she would suffer irreparable harm, and that the trial court erred in denying DSHS's plea to the jurisdiction because there is no waiver of sovereign immunity in this case.

## STANDARD OF REVIEW

We review the grant or denial of a temporary injunction for an abuse of discretion. *See Walling v. Metcalfe*, 863 S.W.3d 56, 58 (Tex. 1993) ("The decision to grant or deny a temporary writ of injunction lies in the sound discretion of the trial court, and the court's grant or denial is

---

[2] DSHS also filed a motion to dismiss prior to the hearing.

[3] Holmes argues that the dismissal of the SOAH proceeding renders this appeal moot to the extent DSHS seeks to have the injunction dissolved. Because DSHS has not indicated that it would refrain from seeking to detain the device in the future based on Holmes's failure to obtain a written order from a physician prior to each use, we will review all of DSHS's issues on appeal, including those related to the propriety of the injunction.

subject to reversal only for a clear abuse of that discretion."). A trial court abuses its discretion when it acts arbitrarily, unreasonably, and without reference to guiding rules or principles, or misapplies the law to the established facts of the case. *See Walker v. Gutierrez*, 111 S.W.3d 56, 63 (Tex. 2003); *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). We may neither substitute our judgment for that of the trial court nor resolve the merits of the underlying case. *See Davis v. Huey*, 571 S.W.2d 859, 861-62 (Tex. 1978). Rather, we review the evidence in the light most favorable to the trial court's order, indulging every reasonable inference in its favor. *See CRC-Evans Pipeline Int'l, Inc. v. Myers*, 927 S.W.2d 259, 262 (Tex. App.—Houston [1st Dist.] 1996, no writ).

In an appeal from a plea to the jurisdiction, we "review the face of appellants' pleadings to determine whether they show a lack of jurisdiction or whether the pleadings, if liberally construed, favored jurisdiction." *Atmos Energy Corp. v. Abbott*, 127 S.W.3d 852, 855 (Tex. App.—Austin 2004, no pet.). Whether a trial court has subject-matter jurisdiction is a question of law we review de novo. *Westbrook v. Penley*, 231 S.W.3d 389, 394 (Tex. 2007). In reviewing a plea to the jurisdiction, we consider the pleadings and, when necessary to resolve the jurisdictional issues raised, relevant evidence submitted by the parties. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004).

## DISCUSSION

*State and Federal Regulation of Laser Hair Removal Devices*

In its first and second issues on appeal, DSHS argues that in issuing the temporary injunction, the trial court erred by failing to require Holmes to obtain an order or prescription from

4

a physician for each patient on whom she performs laser hair removal.[4] DSHS's argument is based

on its contention that such an order or prescription is required by state and federal law. Holmes

disagrees, stating that the applicable state and federal statutes only require a written order or

prescription from a physician for a *sale* of the device, but not for subsequent use of the device in

performing laser hair removal procedures. Both parties rely on their respective interpretations of the

Texas Food, Drug, and Cosmetic Act, Tex. Health & Safety Code Ann. §§ 431.001-.279, and the

Federal Food, Drug, and Cosmetic Act, 21 U.S.C.A. §§ 301-399a (West 1999 and Supp. 2008),

neither of which expressly addresses this issue.

DSHS contends that the trial court improperly issued a temporary injunction allowing

Holmes to continue violating the law. *See Ahmed v. Shimi Ventures, L.P.*, 99 S.W.3d 682, 692

(Tex. App.—Houston [1st Dist.] 2003, no pet.) (stating that trial court "abuses its discretion when

it issues an injunction that orders an illegal act, even when done in the name of preserving the

status quo"); *DeNoie v. Board of Regents of Univ. of Tex. Sys.*, 609 S.W.2d 601, 603 (Tex. Civ.

App.—Austin 1980, no writ) ("Status quo can never be a course of conduct which is a prima facie

violation of law."). However, the question of whether Holmes's use of the laser device is actually

a violation of the law has not yet been resolved, and is in fact the contested issue in the underlying

case. While illegal conduct cannot be justified as preservation of the status quo, "neither should

conduct be adjudicated illegal based merely on pleadings and a brief, non-evidentiary TRO hearing

---

[4] In its first issue, DSHS argues that the trial court erred in deferring to the discretion of Holmes's medical director the decision whether to require authorization from a physician for each use of the laser device. In its second issue, DSHS argues that the trial court erred in issuing an injunction which allows "illegal behavior." Because both of these issues turn on the question of whether a written order or prescription from a physician is required for each use of the laser device, we will address them together.

when substantial rights are involved and the issues are far from clear." *In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004). While the record in this case also includes an evidentiary hearing on the temporary injunction, the evidence presented at that hearing merely served to confirm that the state of the law on the level of physician supervision required for use of laser hair removal devices is unclear.[5] A trial court does not commit a clear abuse of discretion in issuing a temporary injunction where, as here, the question of whether the status quo constitutes illegal conduct "is the central question of the suit," and therefore "should be determined with a full trial on the merits." *City of Arlington v. City of Fort Worth*, 873 S.W.2d 765, 769 (Tex. App.—Fort Worth 1994, writ denied). Accordingly, we overrule DSHS's first and second issues on appeal and hold that the trial court did not commit a clear abuse of discretion in issuing the temporary injunction. We decline to address the issue of whether a prescription or other written order from a physician is required for each laser hair removal procedure performed using the device at issue in this case, as the issue is not properly before us in this interlocutory appeal.

*Irreparable Harm*

In its third issue on appeal, DSHS contends that the trial court erred in granting the temporary injunction because Holmes failed to establish that she would suffer irreparable harm in the absence of an injunction. In order to obtain a temporary injunction, a party must plead and prove, among other things, that they will suffer irreparable harm if the status quo is not preserved pending

---

[5] This evidence included testimony from Tom Brinck, the manager of DSHS's drugs and medical devices group, Dr. Steven Finder, a physician involved in laser hair removal, and Greg Absten, the director of a medical education group that runs training programs in laser application. Brinck took the position that state and federal law requires a prescription or other written order from a physician for each use of a laser hair removal device, while Finder and Absten testified that a prescription or written order is required only for the initial sale of the device.

6

trial on the merits. *See Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). "An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard." *Id.* Irreparable harm for purposes of a temporary injunction may include noncompensable injuries such as a "company's loss of goodwill, clientele, marketing techniques, office stability and the like." *Graham v. Mary Kay, Inc.*, 25 S.W.3d 749, 753 (Tex. App.—Houston [14th Dist.] 2000, pet. denied); *see also Texas Indus. Gas v. Phoenix Metallurgical Corp.*, 828 S.W.2d 529, 533 (Tex. App.—Houston [1st Dist.] 1992, no writ) (holding that party made sufficient showing of irreparable harm where company's credit history would be ruined unless injunction was granted). At the temporary injunction hearing, Holmes testified that she has had to cancel client appointments as a result of the embargo, leading some clients to indicate that they would no longer use her services. She further testified that without the use of the device, her credit history would be negatively affected because she would be unable to pay rent or make payments on the device, which she purchased on credit. Holmes also stated that if the embargo remained in place, she would be forced to lay off employees and could potentially go out of business. Given this testimony, we cannot conclude that the trial court committed a clear abuse of discretion in finding that Holmes would suffer irreparable injury in the absence of a temporary injunction. DSHS's third issue is overruled.

*Plea to the Jurisdiction*

In its fourth and fifth issues on appeal, DSHS claims that the trial court erred in denying its plea to the jurisdiction because DSHS's sovereign immunity has not been waived and because the court lacked jurisdiction over Commissioner Lakey.

7

Absent an express waiver of sovereign immunity, the State, its agencies, and its officials are generally immune from suit. *State v. Holland*, 221 S.W.3d 639, 643 (Tex. 2007). However, sovereign immunity does not shield a governmental entity from a suit for equitable relief for a violation of constitutional rights. *See City of Beaumont v. Bouillion*, 896 S.W.2d 143, 149 (Tex. 1995) ("[S]uits for equitable remedies for violation of constitutional rights are not prohibited."); *see also* Tex. Const. art. 1, § 29 ("[W]e declare that everything in this 'Bill of Rights' is excepted out of the general powers of government, and shall forever remain inviolate, and all laws contrary thereto, or to the following provisions, shall be void."). DSHS contends that Holmes cannot take advantage of the sovereign immunity waiver for constitutional claims because she has failed to allege a valid constitutional claim.

A plea to the jurisdiction "does not authorize an inquiry so far into the substance of the claims presented that plaintiffs are required to put on their case simply to establish jurisdiction." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). However, when a plea to the jurisdiction challenges the existence of jurisdictional facts, "we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do." *Miranda*, 133 S.W.3d at 227. "[I]n a case in which the jurisdictional challenge implicates the merits of the plaintiffs' cause of action and the plea to the jurisdiction includes evidence, the trial court reviews the relevant evidence to determine if a fact issue exists." *Id.* at 227. "If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder." *Id.* at 227-28.

In her petition, Holmes brings both a takings claim and a due process claim in relation to the DSHS seizure of her property. DSHS contends that Holmes's constitutional claims are invalid

8

because she did in fact receive due process. Rather than determining whether Holmes was deprived of due process in this case, the trial court exercised its discretion by deferring the resolution of the jurisdictional issue until the time of trial. *See id.* at 227 ("When the consideration of a trial court's subject matter jurisdiction requires the examination of evidence, the trial court exercises its discretion in deciding whether the jurisdiction determination should be made at a preliminary hearing or await a fuller development of the case . . . ."). In her petition, Holmes alleges that because DSHS did not provide her with any kind of pre-embargo notice and hearing or a prompt post-embargo notice and hearing, and because the Texas Food, Drug, and Cosmetic Act fails to provide for any such notices or hearings, she was unconstitutionally deprived of her property without due process.[6] Because these allegations create an adequate basis for a due process claim, we hold that the trial court did not err in denying the plea to the jurisdiction and deferring its determination of whether Holmes was unconstitutionally deprived of due process until the case could be more fully developed.[7]

While DSHS also argues that the trial court had no jurisdiction over David Lakey in his official capacity as Commissioner of DSHS, Texas law is clear that private parties may seek declaratory relief against state officials who are acting pursuant to an allegedly unconstitutional law.

---

[6] While Holmes did receive a SOAH hearing on August 4, 2008, the hearing was scheduled after her petition was filed. On appeal, Holmes maintains that the post-deprivation SOAH hearing was insufficient to satisfy due process.

[7] In light of our holding, we need not decide whether section 431.048 of the health and safety code expressly waives sovereign immunity to the extent a party seeks to regain the use of property detained or embargoed by DSHS. *See* Tex. Health & Safety Code Ann. § 431.048 (West Supp. 2008) ("A person may not use a detained or embargoed article, remove a detained or embargoed article from the premises, or dispose of a detained or embargoed article by sale or otherwise without permission of the commissioner, the authorized agent, *or a court*.") (emphasis added).

*See Rylander v. Caldwell*, 23 S.W.3d 132, 136 (Tex. App.—Austin 2000, no pet.). Given that Holmes is seeking a declaration that the Texas Food, Drug, and Cosmetic Act "works an unconstitutional deprivation of property without due process," we hold that the trial court properly had jurisdiction over the Commissioner in his official capacity.

Accordingly, we overrule DSHS's fourth and fifth points on appeal and hold that the trial court did not err in denying the plea to the jurisdiction.

## CONCLUSION

We affirm the trial court's order denying DSHS's plea to the jurisdiction and issuing the temporary injunction.

_____

Diane M. Henson, Justice

Before Chief Justice Jones, Justices Puryear and Henson

Affirmed

Filed: May 15, 2009

10